Porter, J.
delivered the opinion of the court. This action was commenced on a promissory note for $15000, executed at New-York, on the 15th July, 1814, by Marquand and Paulding. This partnership is alleged to consist of two persons, viz. Isaac Marquand and Cornelius Paulding; that they carried on business in New-Orleans, under the firm of Cornelius Paulding and Co. and in New-York, under that signed to the note. The sum of $12,317 99 cents, is stated to be due, and judgment is demanded for it.
The note is attached to the petition. There is indorsed on it a credit for $3425 75 cents, and for all the interest that had accrued up to the 21st of January, 1818.
To this petition, Cornelius Paulding, one of the defendants, filed a separate answer, in which he, first, pleads the general issue, and then specially, that he is not indebted, in his private capacity, nor as a partner, with the said Marquand, to the petitioner; that if Marquand was indebted, it must be on his private account, and not as partner. To this *281 answer, there are subjoined various interrogatories.
Answers to interrogatories received by the mayor of New-York, and accompanied by the certificate of the governor, and the seal of the state, are sufficiently authenticated.
A supplemental answer was afterwards put in by consent, in which it is alleged, that the transaction between Woolsey and Marquand was not a partnership, but a private one, for the use and benefit of the said Marquand; that the note on which this suit is brought, was one of two notes, for the repayment of which, the said Marquand pledged 930 shares of the stock of the Phenix Bank, late NewYork Manufacturing Company. That the stock pledged for the re-payment of the note on which this suit is brought, is more than sufficient to pay for the same, and that the defendant never had any knowlege of the loan from Woolsey to Marquand. To this answer several interrogatories are also annexed.
Issues were made up and submitted to a special jury, who found a number of facts. The court gave judgment for the plaintiff, and the defendant appealed.
During the progress of the trial, several bills of exceptions were taken, which will be hereafter noticed.
The defendant and appellant now insists.
*282 1. That the suit ought to have been dismissed on his application in the court below, because the plaintiff neglected to answer the interrogatories submitted to him.
2. That the cause ought to be sent back for a new trial.
3. That if this is not done, judgment must be rendered for the defendant; and lastly, that, if the court decides against him, on all these points, that the judgment must be amended as it respects the interest.
I. The first ground taken by the defendant, is brought before us in the second bill of exceptions, which states, that after the jury had been sworn, the defendant moved to have the petition dismissed, because the plaintiff had failed to reply to the interrogatories annexed to the answer.
We are of opinion, that this application came too late, and that the district judge did not err when he refused to accede to it. If the testimony of the plaintiff was important to the defendant, and was improperly withheld from him, he might have refused to enter into the trial. But having once done so, he had no more right to move to have the cause dism *283 issed, because he wanted that testimony, than he would, at that stage of the proceedings, to have obtained a continuance, because he had not within his reach other evidence material to his defence.
II. The next point made by the appellant, that the cause ought to be sent back for a new trial, is endeavoured to be maintained, as well on bills of exceptions, taken to the introduction of testimony, as on the finding of the jury on some of the facts submitted.
The first bill of exceptions states, that on the trial, the judge permitted the plaintiff to read answers to the supplemental interrogatories, although it was objected, that he had failed to reply to those annexed to the original answer; and it is now urged, that these iriterrogatories formed but one whole, and could not be divided.
If there was any sound objection to the course here pursued, which we are far from admitting, we think, at any rate, the defendant cannot make it. For if error does exist in the proceeding, it commenced with him. If these interrogatories formed but one whole, why were they not put together, and at the *284 same time? That which is asked separately, may be surely answered in the same way, and the district judge certainly did not err when he held, that the plaintiff had a right thus to reply to them.
III. Another decision of the district court, complained of, is, that which admitted a witness to state certain admissions of the defendant, as to the sum which he owed the plaintiff. These admissions, it is contended, were made in the hope and prospect of a compromise, and cannot, therefore, be given in evidence. If it appeared to this court, that they had been so made, we should certainly have held with the defendant's counsel, that they could not be received. But we cannot gather from any thing, shewn to us, that this was the fact. We do not know, in truth, that at the time there was any dispute between the parties, as to the amount due; and are, therefore, of opinion, that the evidence was proper to be submitted to the jury.
We are next called on to remand the cause, because the judge charged the jury, that an answer to one interrogatory was virtually an answer to another, if both were the same in substance.
*285 By the bill of exceptions taken to this opinion, it appears that the defendant, having failed to get the cause dismissed, by reason of the interrogatories not being answered, then turned round, and urged, they must be taken as confessed. The judge admitted the correctness of the doctrine, but stated to the jury that when the same question had been put in the second, or supplemental answer, filed by the defendant, the answer to this question destroyed the presumption which the law would otherwise have created, from not replying to the first. In this opinion, which is sound sense, and which violates no technical rule, this court fully coincides.
We now come to the facts submitted, and the answers thereto, which the defendant insists, are found by the jury so defectively that a new trial is necessary to do justice between the parties.
Before entering on this enquiry, we think proper to state, that we shall always require a strong case to be made out, to induce us to remand a cause for a new trial, when no application to obtain the same relief was made in the court below, and this—first, from a wish to discountenance a course of proceeding, *286 which, by permitting the party to apply here, for what he might have obtained in the other court, must necessarily bring with it great delay; and secondly, because we lose the benefit of the opinion, and information of the judge who tried the cause, who saw how it was conducted, and who heard the witnesses. The statute which gives this court the permission to remand for a new trial, "when the justice of the case requires it," meant to confer an authority that would enable us to prevent injustice, in causes so circumstanced, that without this power one could not reach their merit, but left the ordinary application, on common grounds, to the court who tried the cause. This intention of the legislature is manifest, from the provision contained in Martin's Digest, vol. 2, page 202, which declares, that a new trial shall not be granted, unless the motion is made in sufficient time, to enable the court to pronounce on it, during the session at which the trial of the cause is had.
Our attention is first called to the third fact, on the part of the plaintiff, the answer to which, it is alleged, amounts to a general verdict.
The fact submitted, was in these words, "that the stock pledged for the payment of *287 the above note, has been sold by consent Cornelius Paulding and Isaac Marquand, and the proceeds credited to the said note, and after crediting the same, and all other payments, the sum paid on said note, amounts to , and no more.” Answer by Jury, “ to $3424 75 cts. on the 21st of January, 1818, interest paid to that date.”
It is clear, that this, so far from amounting to a general verdict, which is a conclusion from all the facts and laws in the case, only finds one fact; and that is, the sum paid, for which the defendant is entitled to a credit.
The next objection is, that in the finding the jury, on the second fact submitted by the defendant, they refer to an account, which account does not exist, and is not to be found in the record.
As the jury have found the fact positively, we do not think that the circumstance of their having added, “ according to an account,” can, in any respect, vitiate the finding.
The answers to the third and fourth facts, are stated to be given in so incomplete a manner, that the meaning of the jury is not intelligible. We believe, however, that the meaning to be drawn from them is plain, and ad *288 mits but of one interpretation. The jury is asked, in the fourth interrogatory, "were not 930 shares of the stock of the Phenix Bank pledged by Marquand to Woolsey? This they answer in the affirmative. They are next asked in the interrogatory immediately succeeding, “ were not 330 shares of the Phenix Bank pledged by Marquand to Woolsey, for securing the payment of the note of hand, to the petition annexed ? And on this, they find that there was not 330 shares pledged in addition to the 930 aforesaid. This is certainly saying, that the 330 last mentioned, made a part of the 930, and that there was but that number pledged in all.
The finding to the sixth interrogatory, admits of the same explanation.
The answers to the eighth and fourteenth questions, are next alleged to be inconsistent with each other, and that judgment cannot be given on them. There is an apparent, but not a real contradiction here. The eighth fact submitted to the jury is, “ did Marquand pay any thing to Woolsey, on account of the monies stated in the petition, to be advanced to Marquand and Paulding ? To this, they answer, he did not. The fourteenth, requires them to *289 say, "if any payment was made on account of the note annexed to the petition, and on this they find that $3424 75 cts. were paid."
Now, although both these facts relate to a demand, arising from the same cause, and that is, the note on which suit is brought, they are still perfectly consistent with each other. For it is true, that the defendant has made a payment on the note. But, as the petition only alleges the balance due, after deducting that payment, it is equally true, that there is no payment on account of the monies stated in the petition to be advanced.
The twelfth fact which inquires of the jury, at what time were the 930 shares of Phenix Bank stock, pledged to the plaintiff, by defendant’s partner, is answered, “ believed to be pledged when the money was loaned,” and this finding, it is said also, requires a new trial. “We do not, however, think so, for allowing the defendant to fix any date he pleases for the period when the stock was pledged, it cannot alter the judgment, which the other facts, found in the cause, compel the court to pronounce.”
III. The last point, made by the defendant *290 is, that judgment ought to be given in his favour, because (as is alleged) the plaintiff, not having answered the interrogatories propounded to him, they must therefore be taken as confessed, and the finding of the jury, contrary to such confession, is void.
The answer to these interrogatories was first taken before a notary public, who certified them under the seal of his office. This not being considered sufficient, they were again drawn up, and sworn to before Cadwallader D. Colden, mayor of the city of New-York, who attests the fact under the seal of the mayoralty of the city. To this there is added a certificate of governor Clinton, under the privy seal of the state, that he is mayor, and that full faith and credit is due to his official acts. The bill of exceptions also states, that the plaintiff offered proof of the identity of the seals, and that of the hand writing of the respective signatures already mentioned.
The judge refused to admit these answers so certified, and the plaintiff excepted.
It is now contended, that they were properly rejected, because the mode pointed out by the acts of congress for authenticating records and judicial proceedings of a state, so that *291 they may be given in evidence in another, has not been pursued in the certificate annexed to them.
The first legislative provision, on this subject, is contained in an act of congress, passed 26th of May, 1790, which provides, “ that the acts of the legislature of the several states, shall be authenticated by having the seal of the respective states affixed thereto : that the records and judicial proceedings of the courts of any state shall be proved and admitted by the attestation of the clerk.
Now, this is not a record of another state, for the original is sent on here, and no “ memorial or remembrance” of it is preserved in the place where it is taken; Is it then a judicial proceeding of a court of another state ? We think not, nor can it be so considered, unless it is adopted as a principle, that every official act of a single magistrate is one. For surely the administering of an oath to a person presenting himself to swear, to a voluntary affidavit, is not the judicial proceedings of the court of another state. It can hardly be called a judicial proceeding of the individual who takes the affidavit, but certainly makes not a part of the proceedings of their courts.
*292 If any doubt remained, that the act of congress never was intended to embrace such a case as that now before the court, that doubt is completely removed, when we consider the mode of proof required by it, “ the attestation of the clerk of the court, with the seal, if there is one, and the certificate of the presiding judge, that it is in due form.” We are not acquainted with the laws of any state, in the union, which have provided magistrates, acting in a single and distinct capacity, with a clerk, &c. and the other means of complying with these provisions : hence we conclude, they were not intended to embrace such a case as the present, and unless we were to decide, that answers to interrogatories must, in every instance where the party lives in our sister states, be sworn to before a court so constituted, as to admit of their proceedings being authenticated in the manner pointed out by the act already referred to, we cannot reject all other legal proof of the fact.
It was, however, more particularly urged in argument, that this case came within the provisions of the act of congress, passed 27th March, 1804, supplementary to that suit cited and commented on. The part of that act ne *293 cessary to be quoted for a correct understanding of the point, now before the court, is, that which innumerates what kind of acts are necessary to be thus proved. Its words are, that “ from and after the passing of this act, all records and exemplification of office books, which are, or may be kept in any public office of a state, not appertaining to a court, shall be proved and admitted in any other court or office, by the keeper of said records or books, and the seal of his office thereto annexed, if there be a seal. &c,”
We deem it unnecessary to enter into any reasoning, to show that this law is not in any way applicable to the case before the court. That which provides alone for the attestation of records and office books, by the keeper of these records and books, cannot, for a moment, be held to have any relation to an act where the original, instead of being recorded there, is sent on here; and, on the whole, it is evident to the court, that the acts of congress, on this subject were intended to provide for the authentication and proof of those proceedings, which are matters of record in the state from whence they are taken.
We do not wish, however, to be understood *294 to say, that had these answer been authenticated, in the mode pointed out by the act of 1804, we should not have held it sufficient, that act having done little more than make a statutory provision of what was already a general rule of evidence. 2 Cranch, 238.
It now only remains to consider whether the plaintiff offered legal proof of the answers to these interrogatories being sworn to, and we are all satisfied that he did, and that the evidence should have been received, 3 Johns. Rep. 231, 7 ibid. 514, 8 Massachusetts, 273, Philips' Evidence, 319.
Arriving, at last, at the merits of the case, which the ingenuity of counsel has made it so difficult to reach, we find the facts alleged in the petition, on which recovery is demanded, fully made out, and supported by the verdict of the jury, on the facts submitted to them, and the interest given by the court below, has been legally established, according to the principles recognized by this court, in the case of Boggs vs. Reed, 5 Martin, 673.
It is therefore ordered, adjudged and decreed, that the judgment of the district court *295 be affirmed with costs, and that the defendant and appellant pay the costs of this appeal.
Livingston for the plaintiff, Hennen for the defendant.