NORTH CAROLINA STATE PORTS AUTHORITY, an Agency of the State of North Carolina v. LLOYD A. FRY ROOFING COMPANY, a Corporation, UNITED PACIFIC INSURANCE COMPANY, a Corporation, DICKERSON, INC., a Corporation, and E. L. SCOTT ROOFING COMPANY, a Corporation

No. 42

(Filed 24 January 1978)

1. Negligence § 2— negligent performance of contract—when recovery is allowed

Though a breach of contract ordinarily does not give rise to a tort action by the promisee against the promisor, there are many cases of the N. C. Supreme Court holding a promisor liable in a tort action for a personal injury or damage to property proximately caused by his negligent, or wilful, act or omission in the course of his performance of his contract. However, such decisions fall into four general categories: (1) the injury was to the person or property of someone other than the promisee; (2) the injury was to property of the promisee other than the property which was the subject of the contract, or was a personal injury to the promisee; (3) the injury was loss of or damage to the promisee's property, which was the subject of the contract, the promisor being charged by law, as a matter of public policy, with the duty to use care in the safeguarding of the property from harm; and (4) the injury was a wilful injury to or a conversion of the property of the promisee, which was the subject of the contract, by the promisor.

2. Contracts § 21.1— failure to perform contract—no action in tort

A tort action will not lie against a promisor for his simple failure to perform his contract, even though such failure was due to negligence or lack of skill.

3. Contracts § 25.1— improper roof installation—breach of contract—no action in tort against contractor

Where plaintiff alleged that defendant general contractor contracted to construct buildings, including roofs thereon, in accordance with agreed plans and specifications and plaintiff alleged that defendant did not so construct the roofs, the only basis for recovery against defendant alleged in the complaint was breach of contract, and the Court of Appeals was in error in its view that the complaint "alleges an action in tort" against defendant.

4. **Limitation of Actions § 4.3— improper roof installation—action against contractor—accrual from time of completion of entire job**

Where plaintiff instituted this action to recover the cost of repairing leaking roofs on two buildings constructed by defendant general contractor, the plaintiff's alleged cause of action for breach of contract accrued "during the summer of 1968" when construction of the buildings was completed, rather than during the summer of 1967 when the roofing work was completed, since, so long as the buildings were still under construction by defendant, defects therein were subject to correction by defendant and would not give rise to a cause of action by the plaintiff for breach of contract.

5. **Limitation of Actions § 4.3— hidden defects—statute extending period of limitations—applicability to breach of contract actions**

The Court of Appeals erred in concluding that G.S. 1-15(b) does not apply to actions for breach of contract, since the statute, by its terms, applies to any cause of action (other than one for wrongful death, and except where otherwise provided by statute) if an "essential element" thereof is a defect in property, which defect originated under circumstances making it "not readily apparent to the claimant" at the time of its origin.

6. **Limitation of Actions § 4.3— action against contractor—hidden defect—effect of statute extending limitation period**

The trial court's judgment on the pleadings that the plaintiff's alleged cause of action against defendant for breach of contract was barred by the statute of limitations was erroneously entered where it appeared from plaintiff's complaint that defendant's work on the buildings in question was completed sometime during the summer of 1968, but it did not appear whether plaintiff's claim was barred before enactment of G.S. 1-15(b), which extended the time of accrual of an action based on a hidden defect, or whether G.S. 1-15(b) was applicable to plaintiff's cause of action, there being a question whether defects in the buildings' roofs originated under circumstances making them not readily apparent to plaintiff at the time of their origin.

7. **Limitation of Actions § 4.3— ten year limitation—contract not under seal—statute inapplicable**

The ten year statute of limitations contained in G.S. 1-47(2) was not applicable to a contract between plaintiff and defendant general contractor where there was no allegation in the complaint and no showing that the contract was under seal.

8. **Limitation of Actions § 4.3— six year limitation—no defective or unsafe condition—statute inapplicable**

The six year statute of limitations contained in G.S. 1-50(5) did not apply in this action by plaintiff to recover from defendant general contractor the cost of repairing leaking roofs on a warehouse and transit shed, since that statute applies to actions involving injury to property arising out of a defective or unsafe condition of an improvement to real property but does not apply to an action, such as this, for a simple breach, by defective performance, of a contract to construct an improvement on real property.

Ports Authority v. Roofing Co.

9. **Contracts § 14.2— improper installation of roofs—third party beneficiary—no action against subcontractor**

The trial court properly dismissed plaintiff's action against a roofing subcontractor since allegations in the complaint that the subcontractor was the roofing subcontractor of the defendant general contractor and that the subcontractor failed properly to apply roofing material to two buildings, in consequence of which failure the roofs leaked, simply amounted to an allegation that the subcontractor did not properly perform its contract with the general contractor, and such allegation did not allege a cause of action in tort in favor of the plaintiff against the subcontractor. Nor could plaintiff sue the subcontractor for the breach of the subcontractor's contract with the general contractor on the theory that plaintiff was the third party beneficiary thereof, since plaintiff was only an incidental beneficiary of such contract.

ON certiorari to the Court of Appeals to review its decision, reported in 32 N.C. App. 400, 232 S.E. 2d 846 (1977), reversing so much of the judgment of *Rouse, J.*, at the 29 March 1976 Session of CARTERET as dismissed the plaintiff's action against the defendant Dickerson, Inc.

The plaintiff, an agency of the State, instituted this action 7 August 1973 to recover the cost of repairing leaking roofs on two buildings at the plaintiff's facility in Morehead City, Carteret County.

For a first claim for relief, the complaint alleges: In 1967, the plaintiff contracted with Dickerson, Inc., hereinafter called Dickerson, as general contractor, for the construction by Dickerson of a transit shed and a warehouse; Dickerson and E. L. Scott Roofing Company, hereinafter called Scott, then entered into a subcontract for the construction by Scott of the roofs on these two buildings; Lloyd A. Fry Roofing Company, hereinafter called Fry, manufactured and supplied the materials used in the construction of the roofs by the subcontractor; Fry, as principal, and United Pacific Insurance Company, as surety, executed a guaranty bond in favor of the plaintiff guaranteeing the roofs to be watertight; during the summer of 1968, the two buildings were completed and were occupied by the plaintiff; on or about 24 April 1972, the plaintiff experienced difficulties in the form of leaks in both roofs; upon inspection of the roofs, it was ascertained that the roofing membrane had bubbled and blistered; the leaks "were caused by defective materials *or* the defective installation thereof." (Emphasis added.)

Fry and United Pacific Insurance Company are sued upon the theory of breach of their alleged guaranty bond. The present appeal has no relation to the plaintiff's alleged cause of action against these two defendants and it is, therefore, unnecessary to set forth herein the plaintiff's allegations with reference to these defendants or their answers to the complaint.

The complaint further alleges that, on or about 11 July 1973, a portion of the transit shed, including a portion of the roof which leaked, collapsed, but it is not alleged that this was due to the leaking of the roof or to any other act or default of either Dickerson or Scott.

For a second claim for relief, the complaint alleges: "Roofing work on these two buildings was performed during the summer of 1967 by defendant Scott under the supervision and control of defendants Fry and Dickerson"; these defendants "failed to allow the roofs on the buildings in question to dry properly before applying the roofing material *or* the defendants failed to allow the roofing materials themselves to properly dry before being installed" (emphasis added); "the bubbles and blisters in the roofing membrane and the resulting leaks were caused by the negligent failure of the defendants to exercise proper care and workmanship in the application of the roofs"; as a result of the leaks, the plaintiff, at great expense, had to move goods stored in the warehouse and in the transit shed.

For a third claim for relief (added by amendment to the complaint) against the defendant Dickerson, the complaint alleges: The plaintiff contracted with Dickerson "to install, or have installed, roofs on the warehouse and transit shed in accordance with plans and specifications outlined by the plaintiff;" the above mentioned leaks were "caused by the failure of defendant Dickerson to install or have installed, the roofs in accordance with the plans and specifications," whereby Dickerson broke its contract with the plaintiff.

The prayer for relief as to Dickerson and Scott is that the plaintiff have and recover reimbursement "for all necessary repairs to the roofs" and that the plaintiff recover its expenses incurred in moving the above mentioned goods from the warehouse and transit shed, together with the cost of the action.

In its answer, Dickerson admitted that it entered into a contract with the plaintiff for the construction of the warehouse and the transit shed on or about 24 January 1967. It denied that the leaks were caused by defective materials or defective installation and asserted that the cause of the leaks was failure of the plaintiff properly to maintain the roofs. It admitted that roofing work on the two buildings was performed during the summer of 1967 by Scott under the supervision and control of Fry and Dickerson. It denied any failure by these defendants to allow the roofs or the roofing materials to dry properly and denied that the leaks were caused by any negligent failure of these defendants to exercise proper care and workmanship in the application of the roofs.

With respect to the third claim for relief, which was added to the complaint by amendment, Dickerson filed answer denying any breach by it of its contract with the plaintiff and denying that any failure of the roof occurred within the warranty period of the contract.

By way of further answer and defense, Dickerson alleged in its answer: (1) The complaint fails to state a claim upon which relief may be granted; (2) plaintiff and Dickerson contracted that Dickerson "agreed to guarantee its work for a period of twenty-seven months following final acceptance of the work"; the plaintiff accepted the work of Dickerson on or about 16 May 1969; Dickerson pleads as a bar to the plaintiff's action this specific guaranty which expired on or about 16 August 1971; (3) this action is barred by the three-year statute of limitations set forth in G.S. 1-52; and (4) as a requirement of the contract between the plaintiff and Dickerson, the plaintiff required Dickerson have and furnish to the plaintiff a twenty-year roof bond, which Dickerson furnished; the acceptance by the plaintiff of the roof and of the said bond was in lieu of any other guaranty on the part of Dickerson and constituted a waiver of further claims against it by the plaintiff.

In its answer, Dickerson also alleged a cross-action in its favor against Scott, alleging that the latter agreed in its contract with Dickerson for the roofing work "to protect and hold harmless the general contractor [Dickerson] from all claim accounts, demands, actions and proceedings, and sums of money by reason of any act, cause, matter, or thing whatsoever attributable

to the work of E. L. Scott Roofing Company." In this cross-action, Dickerson alleged that Scott performed its agreement in accordance with the terms and specifications of the contract between the plaintiff and Dickerson, but, if the court should find otherwise, Dickerson asserted its right to indemnity against Scott and prayed judgment against it for its expense in defending this action and for such indemnity.

Dickerson also, by way of further answer and a cross-action, alleged an agreement between Scott and Fry for the issuance of a "roofing bond"; that such bond was issued with United Pacific Insurance Company as surety thereon to secure the plaintiff against loss by reason of failure properly to install the product of Fry upon the said roof; that such bond was also for the benefit of Dickerson as general contractor and, therefore, if the plaintiff should recover from Dickerson, in this action, then Dickerson should also recover of Fry and its surety by way of indemnity. The prayer of Dickerson for relief was that the plaintiff's complaint be dismissed and that Dickerson have and recover of the other defendants, by way of indemnity, any sums recovered of Dickerson by the plaintiff.

Scott filed answer to the complaint denying any default by it and any liability upon it to the plaintiff, pleading also as a further defense the three-year statute of limitations.

Scott further filed answer to the cross-action against it by Dickerson, alleging that it fully performed its agreement with Dickerson, properly performing all such work without negligence and further pleading the three-year statute of limitations.

Dickerson moved, pursuant to Rule 12(c) of the Rules of Civil Procedure, for judgment in its favor on the ground that the allegations of the complaint and the admissions in its answer show that the plaintiff's right to relief against it is barred. Alternatively, Dickerson moved, pursuant to Rule 12(b) of the said Rules, to dismiss the plaintiff's claim against it on the ground that the complaint fails to state a claim upon which relief may be granted against Dickerson.

Judge Rouse heard the matter upon the said motion by Dickerson and upon the answer of Scott, which asserts that the complaint fails to state a claim upon which relief can be granted against it. It appearing to him that the plaintiff's right of action,

if any, against these defendants accrued during the summer of 1967 and that more than three years had elapsed from the accrual thereof at the time of the commencement of the action, he concluded that the claim of the plaintiff against these defendants is barred by the statute of limitations as set forth in G.S. 1-52(1) and (5). He, therefore, ordered the plaintiff's action be dismissed as against Scott and Dickerson, with prejudice, and taxed the costs against the plaintiff. From this order the plaintiff appealed to the Court of Appeals.

The Court of Appeals affirmed the order of Rouse, J., insofar as that order dismissed the plaintiff's action against Scott, but reversed the order insofar as it dismissed the plaintiff's action against Dickerson.

The Court of Appeals was of the opinion that the complaint alleges a cause of action in tort against Dickerson for negligent construction of the roofs, saying that negligent performance of a contract may constitute a tort as well as a breach of contract. It held that Judge Rouse properly dismissed the third cause of action alleged by the plaintiff in its amended complaint for the reason that it was an action in contract and was barred by the three-year statute of limitations.

The Court of Appeals said that the cause of action for negligent construction arose when Dickerson delivered the buildings to the plaintiff "some time during the summer of 1968," so that the three-year statute of limitations, then applicable to this cause of action, would have run at some time during the summer of 1971 but the exact date on which such three-year statute would have run could not be determined from the pleadings.

On 21 July 1971, the General Assembly enacted G.S. 1-15(b). The Court of Appeals held this statute does not apply to actions for breach of contract, so that it did not extend the time for bringing the plaintiff's action for breach of contract. However, said the Court of Appeals, G.S. 1-15(b) did extend the time for bringing the plaintiff's action for the alleged negligent construction of the roofs, provided such action was not barred on 21 July 1971 when G.S. 1-15(b) was enacted. Since the pleadings do not show that the buildings were completed and delivered over to the plaintiff prior to 21 July 1968 (three years before the enactment of G.S. 1-15(b)) but show only that the construction of the

buildings was completed and that they were occupied by the plaintiff "during the summer of 1968," the Court of Appeals said it does not appear from the pleadings that this cause of action was barred when G.S. 1-15(b) was enacted and, therefore, the dismissal of this claim of the plaintiff against Dickerson under Rule 12(b)(6) was error.

*Rufus L. Edmisten, Attorney General, by Edwin M. Speas, Jr., Special Deputy Attorney General, for the State.*

*Dawkins & Glass by W. David Lee for Dickerson, Inc.*

*White, Allen, Hooten & Hines by Thomas J. White III for E. L. Scott Roofing Company.*

LAKE, Justice.

The Superior Court gave judgment on the pleadings dismissing the plaintiff's action against Dickerson for the reason that the plaintiff's claim is barred by the statute of limitations, having accrued more than three years prior to the institution of this action on 7 August 1973.

Such judgment on the pleadings is proper if, but only if, it appears upon the face of the complaint that the plaintiff's right to recover is barred by the lapse of time properly pleaded. *Speas v. Ford,* 253 N.C. 770, 117 S.E. 2d 784 (1961); *Nowell v. Hamilton,* 249 N.C. 523, 107 S.E. 2d 112 (1959); *Mobley v. Broome,* 248 N.C. 54, 102 S.E. 2d 407 (1958); *Latham v. Latham,* 184 N.C. 55, 113 S.E. 623 (1922); *Stubbs v. Motz,* 113 N.C. 458, 18 S.E. 387 (1893); McIntosh, North Carolina Practice and Procedure, 2d Ed., § 373; G.S. 1A-1, Rule 12. Otherwise, the question is a mixed question of law and fact, the plaintiff having the burden of proving that his action was brought within the time allowed by the applicable statute, but having the right to offer such proof. *Stubbs v. Motz, supra.* As stated in McIntosh, "When the statute has been properly pleaded, it raises an issue of fact to be tried by a jury; and no reply is necessary by the plaintiff, but if it appears on the face of the complaint that the action is barred, and defendant pleads the statute, and there is nothing to show that the bar does not operate, the Court may decide the question upon the facts admitted." McIntosh, North Carolina Practice and Procedure, 2d Ed., § 373.

In the third claim for relief set forth in the complaint, the plaintiff alleges it contracted with Dickerson for the construction of the two buildings, including the roofs thereon, "in accordance with plans and specifications outlined by the plaintiff, and Dickerson broke this contract, as the result of which breach the roofs leaked."

The plaintiff's only prayer for relief under its first claim set forth in the complaint is against Fry and United Pacific Insurance Company upon their guaranty bond. In this portion of the complaint, the plaintiff alleges that the leaks in the roofs were caused by the use of defective materials or by improper installation thereof. If this claim for relief be deemed to allege a cause of action against Dickerson, it is clearly for a breach of the same contract which is the subject of the third claim for relief and adds nothing thereto.

In the second claim for relief set forth in the complaint, the plaintiff alleges "roofing work" on these buildings was performed in the summer of 1967 by Scott under the supervision of Dickerson, that Scott and Dickerson negligently failed to allow the roofs (i.e., the subsurface portions thereof) to dry properly before applying the roofing material or failed to allow the roofing material itself to dry properly before installing it, and that the leaks in the roofs were caused by this negligent failure to exercise proper care and workmanship in the construction of the roofs.

[1] Ordinarily, a breach of contract does not give rise to a tort action by the promisee against the promisor. *Insurance Co. v. Sprinkler Co.*, 266 N.C. 134, 146 S.E. 2d 53 (1966); *Toone v. Adams*, 262 N.C. 403, 137 S.E. 2d 132 (1964); *Greene v. Laboratories, Inc.*, 254 N.C. 680, 120 S.E. 2d 82 (1961); *Council v. Dickerson's, Inc.*, 233 N.C. 472, 64 S.E. 2d 551 (1951). It is true that there are many decisions of this and other courts holding a promisor liable in a tort action for a personal injury or damage to property proximately caused by his negligent, or wilful, act or omission in the course of his performance of his contract. *Insurance Co. v. Sprinkler Co., supra; Jewell v. Price*, 264 N.C. 459, 142 S.E. 2d 1 (1965); *Toone v. Adams, supra; Shearin v. Lloyd*, 246 N.C. 363, 98 S.E. 2d 508 (1957); *Pinnix v. Toomey*, 242 N.C. 358, 87 S.E. 2d 893 (1955); *Insurance Co. v. Parker*, 234 N.C. 20, 65 S.E. 2d 341; *Council v. Dickerson's, Inc., supra; Powers v. Trust Co.*, 219 N.C. 254, 13 S.E. 2d 431 (1941); *Williamson v. Dickens*, 27 N.C. 259

(1844). *See also*: Corbin on Contracts, § 1019; Prosser, Law of Torts, 4th Ed., § 1. However, such decisions by this Court, which have been brought to our attention, appear to fall into one of four general categories:

(1) The injury, proximately caused by the promisor's negligent act or omission in the performance of his contract, was an injury to the person or property of someone other than the promisee. *See*: *Pinnix v. Toomey, supra*; *Council v. Dickerson's, Inc., supra*.

(2) The injury, proximately caused by the promisor's negligent, or wilful, act or omission in the performance of his contract, was to property of the promisee other than the property which was the subject of the contract, or was a personal injury to the promisee. *See*: *Insurance Co. v. Sprinkler Co., supra* (promisee's merchandise damaged by water as the result of negligence in the installation of a sprinkler system); *Jewell v. Price, supra* (promisee's house burned as the result of negligence in the installation of a furnace); *Toone v. Adams, supra* (baseball umpire injured by an irate spectator allegedly due to the Club owner's failure to supply adequate protection); *Shearin v. Lloyd, supra* (medical malpractice).

(3) The injury, proximately caused by the promisor's negligent, or wilful, act or omission in the performance of his contract, was loss of or damage to the promisee's property, which was the subject of the contract, the promisor being charged by law, as a matter of public policy, with the duty to use care in the safeguarding of the property from harm, as in the case of a common carrier, an innkeeper or other bailee. *See*: *Insurance Co. v. Parker*, 234 N.C. 20, 65 S.E. 2d 341 (1951) (automobile stolen from a parking lot inviting public patronage).

(4) The injury so caused was a wilful injury to or a conversion of the property of the promisee, which was the subject of the contract, by the promisor. *See*: *Williamson v. Dickens, supra* (conversion of notes by a bailee for collection); *Simmons v. Sikes*, 24 N.C. 98 (1841) (conversion or wilful destruction of a canoe by a bailee).

[2] It may well be that this enumeration of categories in which a promisor has been held liable in a tort action by reason of his negligent, or wilful, act or omission in the performance of his con-

tract is not all inclusive. However, our research has brought to
our attention no case in which this Court has held a tort action
lies against a promisor for his simple failure to perform his con-
tract, even though such failure was due to negligence or lack of
skill.

[3]   In the present case, according to the complaint, Dickerson
contracted to construct buildings, including roofs thereon, in ac-
cordance with agreed plans and specifications. It is alleged that
Dickerson did not so construct the roofs. If that be true, it is im-
material whether Dickerson's failure was due to its negligence, or
occurred notwithstanding its exercise of great care and skill. In
either event, the promisor would be liable in damages. Converse-
ly, if the roofs, as constructed, conformed to the plans and
specifications of the contract, the promisor, having fully per-
formed his contract, would not be liable in damages to the plain-
tiff even though he failed to use the degree of care customarily
used in such construction by building contractors. Thus, the
allegation of negligence by Dickerson in the second claim for
relief set forth in the complaint is surplusage and should be
disregarded. Consequently, the only basis for recovery against
Dickerson, alleged in the complaint, is breach of contract and the
Court of Appeals was in error in its view that the complaint
"alleges an action in tort" against Dickerson.

[4]   The complaint alleges, "During the summer of 1968, the con-
struction of these buildings was completed." It also alleges, "Roof-
ing work on these two buildings was performed during the
summer of 1967." Assuming that this latter allegation is intended
to mean that all of the roofing work was completed during the
summer of 1967, and further assuming, as the complaint alleges,
that such work was improperly performed, so that the roofs were
not built in accordance with the plans and specifications, the
plaintiff's cause of action against Dickerson did not accrue in the
summer of 1967 but in the summer of 1968 when Dickerson fin-
ished its work on the entire building. Dickerson's contract was for
the construction of a building (actually two buildings). So long as
the building was still under construction by Dickerson, defects
therein were subject to correction by Dickerson and would not
give rise to a cause of action by the plaintiff for breach of con-
tract. A building contractor is not subject to suit instantaneously
whenever his employee negligently fastens a beam or a shingle in

place. Thus, the plaintiff's alleged cause of action for breach of contract accrued "during the summer of 1968."

At that time, an action for breach of contract, regardless of the nature of the breach, was barred by the statute of limitations after three years from the time the cause of action accrued. G.S. 1-52(1). This action was instituted 7 August 1973. Consequently, had there been no change in the applicable statute of limitations, this action would have been barred and, since this appeared on the face of the complaint, the judgment of the Superior Court would have been correct.

On 21 July 1971, G.S. 1-15(b) was ratified and took effect. It provides:

"(b) Except where otherwise provided by statute, *a cause of action*, other than one for wrongful death, *having as an essential element* bodily injury to the person or *a defect in* or damage to *property which originated under circumstances making the* injury, *defect* or damage *not readily apparent to the claimant at the time of its origin*, is deemed to have accrued at the time the injury was discovered by the claimant, or ought reasonably to have been discovered by him, whichever event first occurs; provided that *in such cases* the period shall not exceed ten years from the last act of the defendant giving rise to the claim for relief." (Emphasis added.)

Prior to the enactment of G.S. 1-15(b), the plaintiff's alleged cause of action for breach of contract by Dickerson accrued and the statute of limitations began to run when Dickerson's purported performance of the contract was completed, irrespective of the facts, if they be facts, that the defect in the roofs which constituted the breach of contract was then neither known nor "readily apparent" to the plaintiff and the roofs did not actually leak until a substantial time thereafter. *Sellers v. Refrigerators, Inc.*, 283 N.C. 79, 194 S.E. 2d 817 (1973); *Matthieu v. Gas Co.*, 269 N.C. 212, 152 S.E. 2d 336 (1967); *Jewell v. Price, supra.*

In *McCrater v. Engineering Corp.*, 248 N.C. 707, 710, 104 S.E. 2d 858 (1958), Justice Johnson, speaking for the Court, said: "[I]t is well settled that the time within which an action may be brought may be enlarged as to pending causes *not barred*, and that such legislation [extending the time] is not deemed retroactive and does not impair vested rights." (Emphasis added.) To the

same effect, see: *Wilkes County v. Forester*, 204 N.C. 163, 167 S.E. 691 (1933) and McIntosh, North Carolina Practice and Procedure, 2d Ed., § 275.

[5, 6]   The Court of Appeals was of the opinion that G.S. 1-15(b) does not apply to actions for breach of contract. In this we think the Court of Appeals was in error. *See*, Lauerman, "The Accrual and Limitation of Causes of Actions for Nonapparent Bodily Harm and Physical Defects in Property in North Carolina," 8 Wake Forest Law Review 327. The statute, by its terms, applies to any cause of action (other than one for wrongful death, and except where otherwise provided by statute) if an "essential element" thereof is a defect in property, which defect originated under circumstances making it "not readily apparent to the claimant" at the time of its origin. In the present case, the alleged breach of the contract by Dickerson consists of a defect in the roofs. Thus, "A defect in *** property" is "an essential element" of the plaintiff's cause of action. If this defect "originated under circumstances making it not readily apparent to the claimant at the time of its origin," G.S. 1-15(b) applies to the plaintiff's cause of action and extends the time for the institution of such action, provided Dickerson completed its purported performance of its contract less than three years prior to 21 July 1971 when this statute took effect.

It does not appear upon the face of the complaint either (1) that the defect in the roofs was readily apparent to the plaintiff at the time of its origin, or (2) that Dickerson's work on the buildings was finished prior to 21 July 1968 (three years prior to the effective date of G.S. 1-15(b). G.S. 1-15(b) does not apply to this action for breach of contract unless both of these questions are resolved in favor of the plaintiff; that is: (1) The defect in the roofs originated under circumstances making it not readily apparent to the plaintiff at the time of its origin, and (2) Dickerson's work in performance of its contract was completed on or after 21 July 1968. Since the inapplicability of G.S. 1-15(b) does not appear upon the face of the complaint, the judgment on the pleadings that the plaintiff's alleged cause of action against Dickerson for breach of contract was barred by the statute of limitations was erroneously entered. The plaintiff is entitled to an opportunity to prove both (1) the defect was not so apparent to it, and (2) Dicker-

son's work upon the buildings was not completed prior to 21 July 1968.

Thus, notwithstanding the above mentioned errors in its reasoning, the Court of Appeals reached the correct result in reversing the judgment of the Superior Court insofar as that judgment dismissed the plaintiff's action against Dickerson.

The plaintiff did not petition this Court for review of the judgment of the Court of Appeals. Dickerson and Scott petitioned for review of that judgment "in part and only as to that Court's reversal of the Trial Court judgment dismissing Plaintiff's action in tort as to the Defendant Dickerson." However, Rule 16 of the Rules of Appellate Procedure, 287 N.C. 671, 720, permits an appellant in the Court of Appeals (the plaintiff), who is the appellee in this Court, or a respondent to a petition for certiorari, to present in his brief in this Court, without a cross-assignment of error to the decision of the Court of Appeals, any question which he properly presented to the Court of Appeals. Scott, being presently before this Court by its own petition, Rule 16 permits the plaintiff to present in its brief in this Court the matter of the validity of the judgment of the Superior Court dismissing with prejudice the plaintiff's action against Scott and also to present the plaintiff's contentions that the ten-year statute of limitations (G.S. 1-47(2), applicable to actions on contracts under seal) or the six-year statute of limitations (G.S. 1-50(5), applicable to certain actions for injuries to property) are applicable to its action against Dickerson.

[7] As the Court of Appeals observed, there is nothing in the record before us to indicate that the contract made by Dickerson with the plaintiff was a contract under seal. It is not so alleged in the complaint. Therefore, for the purposes of this appeal, it must be deemed a simple contract and the ten-year statute of limitations contained in G.S. 1-47(2) is not applicable. There was no error in the decision of the Court of Appeals upon this question.

[8] Likewise, there was no error in the decision of the Court of Appeals that the six-year statute of limitations contained in G.S. 1-50(5) has no application to this action. That statute applies to an action "to recover damages for any injury to property, real or personal *** arising out of the defective and unsafe condition of an improvement to real property." The complaint does not allege,

and nothing in the record before us indicates, any injury to property arising out of any "defective and unsafe condition" of the roofs in question. That statute was designed to apply to actions such as *Sellers v. Refrigerators, Inc.*, 283 N.C. 79, 194 S.E. 2d 817 (1973), and *Jewell v. Price*, 264 N.C. 459, 142 S.E. 2d 1 (1965), in which the plaintiff sued for damages for the burning of a dwelling by reason of defects in a furnace improperly installed by the defendant. It does not apply to an action, such as this, for a simple breach, by defective performance, of a contract to construct an improvement on real property.

[9] There was also no error in dismissing the action against Scott. Scott asserted in its answer the defense that the complaint fails to state a claim upon which relief may be granted against it. In this, Scott was correct. Although the complaint states that the plaintiff seeks recovery against Scott "in tort for the negligent installation of the roofs on these two buildings," it alleges that the defendant Scott was the roofing subcontractor of Dickerson, the general contractor, and that Scott failed properly to apply the roofing material, in consequence of which failure the roofs leaked. This is simply an allegation that Scott did not properly perform its contract with Dickerson and, for the reasons above set forth, does not allege a cause of action in tort in favor of the plaintiff against Scott.

As Scott asserts in its answer, it "did not enter into any contract with the plaintiff for the construction of the roofs and there exists no privity of contract between this answering defendant and the plaintiff." The plaintiff may not sue Scott for the breach of Scott's contract with Dickerson on the theory that the plaintiff is the third party beneficiary thereof, it being only an incidental beneficiary of such contract. In § 779D of his Treatise on Contracts, Professor Corbin states:

> "Where A owes money to a creditor, or to several creditors, and B promises A to supply him with the money necessary to pay such debt, no creditor can maintain suit against B on this promise. The same is true in any case where A is under a contractual duty to C the performance of which requires labor or materials, and B promises A to supply him such labor or materials; C has no action against B on this promise.

"The foregoing is applicable to most cases of contracts between a principal building contractor and subcontractors. Such contracts are made to enable the principal contractor to perform; and their performance by the said subcontractor does not in itself discharge the principal contractor's duty to the owner with whom he has contracted. The installation of plumbing fixtures or the construction of cement floors by a subcontractor is not a discharge of the principal contractor's duty to the owner to deliver a finished building containing those items; and if after their installation the undelivered building is destroyed by fire, the principal contractor must replace them for the owner, even though he must pay the subcontractor in full and has no right that the latter shall replace them. *It seems, therefore, that the owner has no right against the subcontractor, in the absence of clear words to the contrary.* The owner is neither a creditor beneficiary nor a donee beneficiary; the benefit that he receives from the performance must be regarded as merely incidental." (Emphasis added.)

Again, in § 787 of his Treatise, Professor Corbin states:

"A promise to pay money to a debtor for him to use in paying his debts is not a promise to pay the debt; and the creditor has no enforceable right. So, also, if the principal contractor contracts with a subcontractor for the supply of materials to be used by the former in erecting a structure, the owner is not a beneficiary of the subcontract. The same will ordinarily be true even though the subcontractor undertakes the incorporation of the materials into the structure, for the reason that this incorporation will not discharge the contractual duty of the principal contractor and the parties do not contemplate that it should. It is the principal contractor's duty to erect and deliver the complete structure according to plans and specifications; and the subcontractor's work does not discharge that duty to any extent. His work is merely a preliminary step that will enable the principal contractor to perform."

The following cases, cited by Professor Corbin, are in accord with his observations: *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed. 290 (1927); *Carolus v. Arkansas*

*Light & Power Co.*, 164 Ark. 507, 262 S.W. 330 (1924); *Police Jury of St. Landry v. Alexander Gravel Co.*, 146 La. 1, 83 So. 316 (1919); and *Majestic Mfg. Corp. v. Riso & Sons Bldg. Co.*, 27 N.Y.S. 2d 845, Aff'd, 27 N.Y.S. 2d 846, 261 App. Div. 1099 (1941).

In *Cox v. Curnutt*, 271 P. 2d 342 (Okla., 1954), a contractor employed a subcontractor to perform certain required cement work. The work was improperly done by the subcontractor, due, it is alleged, to his negligence. In a suit by the owner against both the general contractor and the subcontractor, the court held that the subcontract was not made for the owner's benefit and, consequently, the owner had no action against the subcontractor for the defective performance of the work. *Accord, National Cash Register Co. v. Unarco Industries, Inc.*, 490 F. 2d 285 (1974), as to subcontractor's failure to perform.

In *Vogel v. Supply Co.* and *Supply Co. v. Developers, Inc.*, 277 N.C. 119, 177 S.E. 2d 273 (1970), the landowner sued the subcontractor for breach of the latter's contract with the general contractor of a construction project to supply and install materials therein. Speaking through Justice Huskins, this Court held the plaintiff was a mere incidental beneficiary of the construction subcontract and could not maintain an action against the subcontractor for its breach and thus the subcontractor's motion for summary judgment should have been allowed, citing Corbin on Contracts, § 779D as authority.

Thus, as to the action of the plaintiff against Scott, we do not reach the question of whether the statute of limitations had run when the action was instituted.

The dismissal of the plaintiff's action against Scott does not, of course, bar Dickerson's cross-action against Scott for damages for the alleged breach of the subcontract in the event that Dickerson is ultimately held liable to the plaintiff for damages for breach of the general contract.

The Court of Appeals was, therefore, correct in affirming the judgment of the Superior Court dismissing the plaintiff's action against Scott and in reversing the judgment of the Superior Court dismissing the plaintiff's action against Dickerson. The judgment of the Court of Appeals is, therefore, affirmed.

Affirmed.